STEVEN G. KALAR
Federal Public Defender
Northern District of California
ANGELA CHUANG
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:       Angela_Chuang@fd.org

Counsel for Defendant Rodriguez

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSE RODRIGUEZ,<br><br>Defendant. | **Case No.:** CR 19–279 CRB<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO SUPPRESS, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>**Court:**    Courtroom 6, 17th Floor<br>**Hearing Date:**    October 16, 2019<br>**Hearing Time:**    1:30 p.m. |

TO: UNITED STATES OF AMERICA, PLAINTIFF; DAVID ANDERSON, UNITED STATES ATTORNEY; AND BRIGGS MATHESON, ASSISTANT UNITED STATES ATTORNEY

PLEASE TAKE NOTICE that defendant Jose Rodriguez hereby moves this Court for an order suppressing all fruits of the unlawful searches of his person and backpack on February 7, 2019. The motion is based on this notice and motion, the following memorandum of points and authorities, the accompanying declaration and exhibits, the Fourth Amendment to the United States Constitution, all other applicable constitutional, statutory and case authority, and such evidence and argument as may be presented at the hearing of this motion.

Should any disputed issues of material fact arise with respect to this motion to suppress, Mr. Rodriguez further moves this Court for an evidentiary hearing.

## INTRODUCTION

On February 7, 2019, San Francisco police officers stopped Mr. Rodriguez for riding an electric scooter on the sidewalk. They then proceeded to subject Mr. Rodriguez to a warrantless search of his person based on nothing more than his casually placing his hands into his sweatshirt pocket for a split second and immediately removing them—holding nothing—pursuant to the officers' commands. The officers did not see any weapons nor were there any noticeable bulges in his pocket, waistband, or anywhere else. They were not responding to any calls reporting that Mr. Rodriguez possessed any weapons or had engaged in any criminal activity inherently related to violence. Despite the lack of individualized, particularized facts required to support reasonable suspicion that Mr. Rodriguez was armed and dangerous, the officers still chose to frisk him. Subsequent to such frisk, the officers searched Mr. Rodriguez's backpack after he was already handcuffed. These warrantless searches were presumptively unreasonable. Unless the government meets its burden of establishing an applicable exception to the warrant requirement, both searches violated the Fourth Amendment, and all fruits thereof—including but not limited to any drugs that were recovered—must be suppressed.

## FACTUAL BACKGROUND[1]

On February 7, 2019, at approximately 11:25 PM, San Francisco Police Department ("SFPD") Officers Shaini and Murphy were patrolling the Tenderloin District in full uniform in a marked patrol vehicle. Declaration of Angela Chuang in Support of Motion to Suppress ("Chuang Decl."), Ex. A at 1121, 1126.[2] While in the area near Hyde St. and Golden Gate St, they observed Mr. Rodriguez riding an electric "Bird" scooter on the sidewalk.[3] *Id.* At that point, Officers Shaini and Murphy

---

[1] The following recitation of the facts surrounding Mr. Rodriguez's arrest does not constitute an admission to the veracity of those facts. Facts presented in this section are drawn from police reports and body cameras worn by police officers. Mr. Rodriguez reserves the right to contest the facts as presented following further investigation or other proceedings.

[2] For ease of reference, this motion will cite only to the final 4 digits of the Bates numbers assigned to the relevant exhibits.

[3] "Bird" is a company that offers motorized scooter rentals in San Francisco and the surrounding area.

1  activated their lights and pulled over in order to stop Mr. Rodriguez for a suspected violation of

2  California Vehicle Code ("CVC") § 21235(g).[4] *Id.* Prior to initiating this stop, the officers had not

3  observed any other suspicious or criminal activity on the part of Mr. Rodriguez.

4        After exiting their vehicle, Officers Shaini and Murphy detained Mr. Rodriguez on Hyde St.

5  between Grove St. and Fulton St. *Id.* Mr. Rodriguez did not attempt to flee, but rather acceded to the

6  officers' show of authority. *See* Chuang Decl., Ex. B1 at 07:25:10–07:25:14[5] (showing Mr.

7  Rodriguez getting off the scooter and standing in place with his arms down while speaking to the

8  officers). Mr. Rodriguez was wearing a dark hooded sweatshirt with a central pocket in the front. *Id.*

9  Officer Shaini asked Mr. Rodriguez for identification, to which Mr. Rodriguez responded by pointing

10 down the street and stating that his ID was in his car a few blocks away. Chuang Decl., Ex. A at

11 1121; Chuang Decl., Ex. B1 at 07:25:11–07:25:17. At no time did Mr. Rodriguez refuse to produce

12 ID. During this conversation, Mr. Rodriguez did not make any furtive or suspicious movements.

13 Chuang Decl., Ex. B1 at 07:25:11–07:25:17.  Mere seconds after the initial stop, Officers Shaini and

14 Murphy both donned latex gloves—presumably because they intended to search Mr. Rodriguez at

15 that point—and advised Mr. Rodriguez that scooters were not to be ridden on the sidewalk. *Id.* at

16 07:25:27–07:25:48; Chuang Decl., Ex. B2 at 07:25:22–07:25:48.

17       While the officers were putting on their gloves, Mr. Rodriguez placed both hands in the outer

18 edges of his sweatshirt pocket. Chuang Decl., Ex. B1 at 07:25:38. Officer Shaini instructed him to

19 take his hands out of the pocket and Mr. Rodriguez immediately complied. *Id.* at 07:25:38–07:25:41.

20 When Officer Shaini gave the instruction, he did not elaborate on why he wanted Mr. Rodriguez to

21 take his hands out. *Id.* During the second that Mr. Rodriguez had his hands in his pocket, he had not

22 tried to grab anything from therein. *Id.*

23       Shortly thereafter, Officer Shaini told Mr. Rodriguez to take off his backpack because he was

24 going to "pat [him] down real fast." *Id.* at 07:25:48–07:25:50. Mr. Rodriguez again complied

25 immediately by turning to face the wall and removing his backpack. *Id.* at 07:25:50–07:25:55. In his

26

27 ───────────────

[4] CVC § 21235(g) prohibits the operation of a motorized scooter upon a sidewalk, except as
necessary to enter or leave adjacent property.

28 [5] Any citation to digital video file attachments will identify relevant time periods according to the
embedded timestamps in the upper right corner of the image.

written report, Officer Shaini claims that he "advised Rodriguez that [he] was going to pat him down for weapons since he started to reach in his pocket." Chuang Decl., Ex. A at 1121. However, body camera footage demonstrates that Officer Shaini actually said no such thing; instead, he merely stated, "I'm gonna pat you down real fast" and "while we talk, I need to find your ID." Chuang Decl., Ex. B2 at 07:25:48–07:25:55.

After turning around, Mr. Rodriguez briefly placed his hands in the outer edge of his sweatshirt pocket at the same time as Officer Shaini instructed him to place his hands above his head. Chuang Decl., Ex. B2 at 07:25:55–07:25:56. Without giving Mr. Rodriguez time to comply with this order, Officer Shaini abruptly grabbed both of Mr. Rodriguez's arms and forcibly pulled them above his head. Chuang Decl., Ex. B1 at 07:25:55–07:25:59. This sudden maneuvering of Mr. Rodriguez's arms allowed Officer Murphy to see into the left side of the sweatshirt pocket, where he observed small baggies. *Id.* at 07:25:59; Chuang Decl., Ex. A at 1126. While Officer Shaini continued to hold Mr. Rodriguez's arms up without any resistance, Officer Murphy stated, "just cuff him" and grabbed Mr. Rodriguez's left arm. Chuang Decl., Ex. B1 at 07:26:00–07:26:04.

A physical struggle ensued between the officers and Mr. Rodriguez, but the body camera footage is largely obstructed and therefore does not show exactly what occurred. According to Officer Murphy, Mr. Rodriguez was trying to break free so Officer Murphy pushed him against the nearby metal barricades and then tackled him to the ground, at which point Mr. Rodriguez was handcuffed. Chuang Decl., Ex. A at 1126. Officer Shaini claims that when Mr. Rodriguez pulled his arm out from under his body, he scattered small baggies of drugs on the sidewalk. Chuang Decl., Ex. A at 1121. During this violent altercation, Officer Murphy punched Mr. Rodriguez in the head approximately 5–6 times, causing visible swelling to his left eye. Chuang Decl., Ex. A at 1126. Numerous other officers arrived at the scene and participated in pushing Mr. Rodriguez down and holding him on the ground; during this time, Mr. Rodriguez was yelling in pain. Chuang Decl., Ex. B2 at 07:27:17–07:27:32.

Mr. Rodriguez's person was searched while he was still prone on the ground, and police officers seized his cell phone and $1120 in US currency. *Id.* at 07:29:40–07:34:30; Chuang Decl., Ex. A at 1122. Mr. Rodriguez was subsequently pulled up to a seated position with his hands cuffed

1   behind his back. Chuang Decl., Ex. B2 at 07:34:30. He was completely subdued and his backpack

2   that he had previously removed was beyond his reach. *Id.* Small baggies of drugs that had landed on

3   the sidewalk were seized by the officers. *Id.* At this point, other police officers arrested a civilian

4   woman who had tried to record cellphone video of Mr. Rodriguez's arrest, and she can be heard

5   screaming in pain while they walk her to a police car. *Id.* at 07:27:40, 07:34:20–07:34:35. After she

6   was arrested, Officer Shaini picked up Mr. Rodriguez's backpack from the ground, unzipped it, and

7   searched through all the pockets, where he found, *inter alia*, empty plastic baggies and a scale—this

8   search was conducted without a warrant and without Mr. Rodriguez's consent. *Id.* at 07:34:32–

9   07:35:25.

10      On June 20, 2019, a grand jury indicted Mr. Rodriguez on five counts of possession with intent

11  to distribute various controlled substances, in violation of 18 U.S.C. § 841(a)(1) and (b)(1)(C). All

12  counts of the indictment arose from evidence seized during the encounter on February 7, 2019.

**ARGUMENT**

13

14  **I.    The Government Bears The Burden Of Proving That Any Warrantless Search Does Not Violate The Fourth Amendment's Warrant Requirement**

15      "The Fourth Amendment provides in relevant part that '[t]he right of the people to be secure in

16  their persons, houses, papers, and effect, against unreasonable searches and seizures, shall not be

17  violated.'" *United States v. Jones*, 132 S. Ct. 945, 949 (2012) (quoting U.S. CONST. AMEND. IV). Mr.

18  Rodriguez's person plainly falls within the protection of the Fourth Amendment, as does his

19  backpack.

20      It is a well-established bedrock principle that warrantless searches "'are per se unreasonable

21  under the Fourth Amendment—subject only to a few specifically established and well-delineated

22  exceptions.'" *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S.

23  347, 357 (1967)). "The burden of proving that a warrantless search or seizure falls within an

24  exception to the warrant requirement is on the government." *See United States v. Scott*, 705 F.3d 410,

25  416 (9th Cir. 2012); *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012) ("Because

26  warrantless searches and seizures are per se unreasonable, the government bears the burden of

27  showing that a warrantless search or seizure falls within an exception to the Fourth Amendment's

28  warrant requirement."). The government must prove the lawfulness of a warrantless seizure or search

by a preponderance of the evidence. *See United States v. Vasey*, 834 F.2d 782, 785 (9th Cir. 1987) ("The government must prove the existence of an exception to the Fourth Amendment Warrant Requirement by a preponderance of the evidence."). If the government does not carry its burden, all fruits of the warrantless search must be suppressed. *See, e.g.*, *United States v. Caseres*, 533 F.3d 1064, 1076 (9th Cir. 2008) (reversing district court's denial of motion to suppress because government did not carry its burden of justifying warrantless search).

Accordingly, the government must prove that both the warrantless frisk of Mr. Rodriguez's person and the subsequent warrantless search of his backpack were lawful in order to prevail. Mr. Rodriguez contends that the government will fail to meet its burden, and therefore, all evidence obtained as a result of these unlawful searches must be suppressed as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963).[6]

## II.   Mr. Rodriguez Was Seized When Officers Shaini And Murphy First Stopped Him On The Sidewalk

An individual is seized within the meaning of the Fourth Amendment "when a law enforcement officer, through coercion, physical force, or a show of authority, in some way restrict the liberty of [that] person." *United States v. Washington,* 387 F.3d 1060, 1068 (9th Cir. 2004) (internal citations omitted). A person's liberty is restrained when, taking into consideration "all of the circumstances surrounding the encounter, the police conduct 'would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991); *see also Terry v. Ohio*, 392 U.S. 1, 16 (1968) ("[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."). Where physical force has not been used to restrain an individual, a seizure—for Fourth

---

[6] "It is well established that, under the 'fruits of the poisonous tree' doctrine, evidence obtained subsequent to a violation of the Fourth Amendment is tainted by the illegality and is inadmissible. . . unless the evidence obtained was 'purged of the primary taint.'" *United States v. Washington*, 490 F.3d 765, 775 (9th Cir. 2007) (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963); *see also United States v. Davis*, 332 F.3d 1163, 1170–71 (9th Cir. 2003) (stating that "the standard articulated in Wong Sun remains the relevant test"). "The question is whether, granting establishment of the primarily illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *United States v. Johns*, 891 F.3d 243 (9th Cir. 1989). In addition, "the government has the burden to show that the evidence is not 'the fruit of the poisonous tree." *United States v. Twilley*, 222 F.3d 1092, 1097 (9th Cir. 2000).

1  Amendment purposes—may still occur if such individual has submitted to law enforcement's
2  assertion of authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991).

3         Mr. Rodriguez was stopped by two uniformed police officers who had pulled over to detain
4  him after activating the lights on their patrol vehicle. Officers Shaini and Murphy each stood on
5  opposite sides of Mr. Rodriguez, which foreclosed his ability to walk in either direction. Chuang
6  Decl., Ex. B1 at 07:25:10–07:25:14. Under these circumstances, a reasonable person would not have
7  felt free to leave. Moreover, Mr. Rodriguez clearly submitted to the officers' assertion of authority, as
8  demonstrated by his stepping off the scooter, standing in place, and answering their questions. He
9  never attempted to run away or flee, and he complied with their commands—specifically, prior to the
10 frisk, Mr. Rodriguez immediately removed his hands from his pocket when told to do so, he took off
11 his backpack when told to do so, and he turned towards the wall when Officer Shaini said he wanted
12 to pat him down. At the least, even if the Court finds that Mr. Rodriguez was not seized when the
13 officers first stopped him, he certainly was seized when he submitted to Officer Shaini's order to take
14 off his backpack for a pat down search.

15 **III.  Only Reasonable Suspicion That Mr. Rodriguez Was Armed And Dangerous Could
       Justify The Frisk**
16
17        A proper *Terry* stop based on reasonable suspicion that a person has committed, is committing,
   or is about to commit a crime[7] does not confer upon a police officer the right to subject that person to
18
   a *Terry* frisk for weapons. *See Terry*, 392 U.S. at 21–24, 27; *Minnesota v. Dickerson*, 508 U.S. 366,
19
20 373 (1993). Rather, the propriety of a protective frisk must be analyzed separately from the initial
21 seizure in order to determine whether it was reasonable or not. *United States v. Thomas*, 863 F.2d
22 622, 628 (9th Cir. 1988). A frisk for weapons is justified under the Fourth Amendment only if there
23 exists an objectively reasonable belief—based on specific and articulable facts—that the person "may
24 be armed and presently dangerous." *Terry*, 392 U.S. at 30. "[I]narticulate hunches" are insufficient
25 justification for a frisk, as is subjective good faith on the part of the police officer. *Id.* at 22.
26 Furthermore, the purpose of a *Terry* frisk is to provide for the safety of the officer and others by

27 _____

28 [7] Mr. Rodriguez does not presently contest the lawfulness of the initial stop based on reasonable
    suspicion that he was riding a scooter on the sidewalk in violation of CVC § 21235(g).

DEF.'S MOTION TO SUPPRESS
*RODRIGUEZ*, CR 19–279 CRB

1    allowing a minimally invasive search for **weapons**, not for other contraband. *See id.* at 30–31.

2       Nothing in *Terry* or its progeny can be understood to authorize a generalized cursory search for

3    weapons. *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1022 (9th Cir. 2009). Needless to say, a

4    frisk is invalid and thus violates the Fourth Amendment if it is a general exploratory search motivated

5    out of a desire "to prevent the disappearance or destruction of evidence of crime." *Id.* at 29. In

6    analyzing the reasonableness of a frisk, courts must determine "whether the officer's action was

7    justified at its inception." *Id.* at 20. In Mr. Rodriguez's case, it was not.

8    **IV.   The Officers Lacked Reasonable Suspicion To Believe That Mr. Rodriguez Was Armed
         And Dangerous**

9
       Reasonable suspicion that a person is armed and dangerous must be underpinned by specific,

10   articulable facts in order to justify a frisk. *Terry*, 392 U.S. at 30. The lawfulness of a search must be

11   predicated only upon facts known to the officers at that moment in time. *See, e.g.*, *Moreno v. Baca*,

12   400 F.3d 1152, 1165 (9th Cir. 2005) ("[A]lmost without exception in evaluating alleged violations of

13   the Fourth Amendment the Court has first undertaken an objective assessment of an officer's actions

14   in light of the facts and circumstances **then known to him**.") (quoting *Scott v. United States*, 436

15   U.S. 128, 137 (1978) (emphasis added)). A combination of specific facts—such as suspicious bulges

16   in clothing, furtive movements, and combative behavior—can rise to the level of reasonable

17   suspicion necessary for a frisk. *See United States v. Flatter*, 465 F.3d 1154, 1157–58 (9th Cir. 2006).

18   Courts also look to the nature of the crime suspected to see whether it is the type of crime that is

19   inherently associated with the use of weapons, thereby justifying a frisk. *Id.* at 1158 (comparing cases

20   that have found reasonable suspicion in scenarios involving suspected robbery, burglary, and large-

21   scale narcotics dealing, with a case involving counterfeiting where reasonable suspicion was lacking).

22      As a threshold matter, it is important to pinpoint the inception of the frisk. Mr. Rodriguez

23   submits that such inception occurred when Officers Shaini and Murphy both began putting on gloves,

24   as this action strongly indicates that they had already formed the intention to touch and search Mr.

25   Rodriguez. At that moment, Mr. Rodriguez had engaged in the following actions, none of them

26   indicative of weapons possession: stopped the scooter as directed, stood in one place, held his arms at

27   his side except to briefly point to his car, and answered the officers' questions about where his ID

28

1   was.[8] He had not reached for anything in his backpack, he had not made any furtive movements, he

2   had not attempted to flee or even walk away from the officers. The officers were not responding to

3   any reports that Mr. Rodriguez or anyone resembling Mr. Rodriguez was carrying a weapon or had

4   engaged in any violent behavior. Body camera footage of the encounter shows that there were no

5   suspicious bulges in Mr. Rodriguez's clothing. Chuang Decl., Ex. B1–B2; *see United States v.*

6   *Thomas*, 863 F.2d 622, 629 (9th Cir. 1988) (finding no reasonable suspicion in part because officers

7   did not see suspicious bulges). Additionally, Officer Shaini's own words—"I'm gonna pat you down

8   real fast. While we talk, I need to find your ID"—as captured by his body camera indicate that he

9   initiated this frisk not because of concern about weapons but rather to conduct an unlawful

10  generalized search (i.e., for Mr. Rodriguez's ID). Chuang Decl., Ex. B2 at 07:25:49–07:25:54.

11          If this Court finds that the frisk began not when the officers put on their gloves, but rather when

12  Officer Shaini told Mr. Rodriguez to take off his backpack because he was going to pat him down,

13  that difference does not negate the unlawfulness of the frisk. The only additional action that occurred

14  between the officers donning gloves and Officer Shaini's backpack command was that Mr. Rodriguez

15  placed his hands in the outer portion of his sweatshirt pocket for a split second. The body camera

16  footage makes clear that this was a casual, likely unconscious gesture—he does not appear to be

17  grabbing or reaching into the pocket for anything, but rather merely resting his hands somewhere for

18  comfort. *See* Chuang Decl., Ex. B1 at 07:25:38–07:25:41. The nonthreatening nature of this gesture is

19  further demonstrated by his immediate compliance with Officer Shaini's command to remove his

20  hands from the pocket, and his hands were clearly empty when he did so. *Id.* Mr. Rodriguez had been

21  nothing but cooperative by this stage in the encounter.

22          Finally, the reason for the initial stop—a benign infraction of riding a scooter on the

23  sidewalk—is not inherently linked or closely associated with weapons in any way, which further

24  undermines any claim that the officers frisked Mr. Rodriguez based on safety concerns. *See Flatter*,

25  465 F.3d 1154, 1158 (finding a lack of reasonable suspicion in part because mail theft is not a crime

26  frequently associated with weapons); *Thomas*, 863 F.2d at 629 (finding a lack of reasonable suspicion

27  _____

28  [8] Needless to say, failure to carry one's ID on oneself does not contribute to reasonable suspicion that
    one is armed and dangerous.

in part because counterfeiting is not a crime frequently associated with weapons). In sum, reasonable suspicion to justify a *Terry* frisk of Mr. Rodriguez was woefully lacking in the instant matter. Therefore, all evidence obtained as a result of the unlawful frisk—including baggies of drugs,[9] money, a cell phone, and all evidence taken from the backpack[10]—must be suppressed as fruits thereof.

**CONCLUSION**

For the foregoing reasons, Mr. Rodriguez respectfully requests that the Court suppress all fruits of the warrantless searches of his person and backpack, or if it proves necessary, order an evidentiary hearing to resolve any material factual disputes.

Dated:       September 11, 2019                     Respectfully submitted,

                                                                    STEVEN G. KALAR
                                                                    Federal Public Defender
                                                                    Northern District of California

                                                                    _____
                                                                    ANGELA CHUANG
                                                                    Assistant Federal Public Defender

---

[9] But for the inception of the unlawful frisk, the ensuing physical scuffle would not have occurred, and the baggies of drugs would not have ended up scattered on the sidewalk.

[10] The money, phone, and items in the backpack would not have been discovered if not for the unlawful frisk and subsequent arrest of Mr. Rodriguez.