STEVEN G. KALAR
Federal Public Defender
Northern District of California
ANGELA CHUANG
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:  (415) 436-7700
Facsimile:  (415) 436-7706
Email:      Angela_Chuang@fd.org

Counsel for Defendant Rodriguez

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOSE RODRIGUEZ, <br><br> Defendant. | **Case No.:** CR 19–279 CRB <br><br> **RESPONSE TO UNITED STATES' SUPPLEMENTAL BRIEF REGARDING DEFENDANT'S SUPPRESSION MOTION** <br><br> **Court:**         Courtroom 6, 17th Floor <br> **Hearing Date:** December 12, 2019 <br> **Hearing Time:** 10:00 a.m. |

**INTRODUCTION**

On October 16, 2019, the parties appeared before the Court for a hearing on Mr. Rodriguez's motion to suppress. After ordering an evidentiary hearing, the Court requested supplemental briefing on the following questions: (1) whether the Ninth Circuit and the California Vehicle Code ("CVC") permit custodial arrest of an individual stopped for a minor traffic offense—like the scooter infraction at issue in the present matter—who does not have identification on their person; (2) assuming such arrest is legally permissible, whether officers do in fact arrest people in those circumstances and what alternatives to arrest exist, in light of relevant policies and practices of the San Francisco Police Department ("SFPD"); (3) whether the officers in this case would have arrested Mr. Rodriguez based on a scooter infraction and failure to possess ID; and (4) how the officers eventually identified Mr. Rodriguez.

The government filed a supplemental brief on November 12, 2019. In its brief, the government argues that the Ninth Circuit, through its interpretation of California Penal Code ("CPC") § 853.5, allows custodial arrest for an infraction when an individual does not have satisfactory identification. Officers Shaini and Murphy submitted supplemental declarations in support of the government's argument that the officers would have arrested Mr. Rodriguez on that basis. Mr. Rodriguez agrees that the Ninth Circuit, CPC, and CVC permit custodial arrest for infractions in limited circumstances. However, documents from the SFPD indicate that the department's policies governing citations and traffic enforcement would not have permitted Mr. Rodriguez's custodial arrest for the scooter infraction, and that the overwhelming practice of the SFPD is to cite and release individuals for scooter infractions. Accordingly, the officers' assertion that they would have arrested Mr. Rodriguez solely on the basis of a violation of CVC § 21235(g) because he did not have his driver's license on him is simply not credible, as doing so would have been in direct contravention of the SFPD's own policies and practices.

**ARGUMENT**

**I. The Ninth Circuit Has Interpreted California Law To Allow Custodial Arrest For Infractions Only Under Limited Circumstances**

Generally, a violation of the CVC is considered an infraction unless the specific provision is designated as a misdemeanor or a felony. *See* CVC § 40000.1. The regulations governing motorized

scooters, CVC §§ 21220–21235, are not amongst the provisions designated as misdemeanors or felonies; therefore, violations of scooter regulations are infractions. *See* CVC 40000.15 *et seq.* (listing CVC provisions that are treated as misdemeanors or felonies).

The government correctly states that the Ninth Circuit has held that California law only permits the custodial arrest of an individual for an infraction under limited circumstances, as delineated in CPC § 853.5. *See* Dkt. No. 35 at 2; *Edgerly v. City & Cty. of San Francisco*, 713 F.3d 976, 981 (9th Cir. 2013). The pertinent portion of CPC § 853.5 provides as follows:

> In all cases, except as specified in Sections 40302, 40303, 40305, and 40305.5 of the Vehicle Code, in which a person is arrested for an infraction, a peace officer shall only require the arrestee to present his or her driver's license or other satisfactory evidence of his or her identity for examination and to sign a written promise to appear contained in a notice to appear. If the arrestee does not have a driver's license or other satisfactory evidence of identity in his or her possession, the officer may require the arrestee to place a right thumbprint, or a left thumbprint or fingerprint if the person has a missing or disfigured right thumb, on the notice to appear. Except for law enforcement purposes relating to the identity of the arrestee, no person or entity may sell, give away, allow the distribution of, include in a database, or create a database with, this print. Only if the arrestee refuses to sign a written promise, has no satisfactory identification, or refuses to provide a thumbprint or fingerprint may the arrestee be taken into custody.

CPC § 853.5(a).[1] Notably, the statutory language explicitly establishes that a person stopped for an infraction is not legally required to possess an ID at that moment in order to avoid custodial arrest; officers may instead require the person to place a thumbprint on the notice to appear to complete the citation process. *Id.* The final sentence of CPC § 853.5(a) describes the only three situations in which an officer is allowed to make a custodial arrest for an infraction: (1) when the person refuses to sign a written promise to appear; (2) when the person has no satisfactory identification; or (3) when the person refuses to provide a fingerprint. *Id.* As will be discussed below, the SFPD further restricts its officers' authority to make custodial arrests for infractions to an even narrower set of circumstances than those described in CPC § 853.5.

---

[1] CVC §§ 40302, 40303, 40305, and 40305.5 describes additional situations in which a custodial arrest for a CVC violation is permissible and/or mandated. The government presumably recognizes that none of these situations applies to Mr. Rodriguez's stop and thus has not asserted that they do.

## II. The Court Should Not Credit The Officers' Self-Serving Assertion That They Would Have Arrested Mr. Rodriguez For the Scooter Infraction

The government contends that Officers Shaini and Murphy would have arrested Mr. Rodriguez based solely on a CVC infraction of riding a motorized scooter on a sidewalk in violation of 21235(g) and the fact that he did not have ID on his person. Dkt. No. 35 at 5; Declaration of SFPD Officer James T. Shaini in Support of United States' Supplemental Suppression Brief ("Shaini Suppl. Decl."), Dkt. No. 35-1, ¶ 6. However, such an arrest would have been in contravention of established SFPD policies and practices. Moreover, the officers did not pursue alternative available means to identify Mr. Rodriguez nor did they follow identification procedures that they themselves describe in their declarations.

### A. SFPD policies generally do not permit custodial arrests based solely on traffic infractions

The SFPD, in conjunction with the Police Commission, has established a series of Department General Orders ("DGOs") that together constitute "the Department's most authoritative and permanent directives . . . ." General Orders, SFPD, https://www.sanfranciscopolice.org/your-sfpd/policies/general-orders. DGOs set policies for all aspects of the SFPD, from rules of conduct to enforcement practices/procedures to uniform requirements.

DGO 5.06 (Citation Release) "mandates the policies for issuing citations to persons arrested for misdemeanor and infraction violations, establishes procedures for citing at the scene, and specifies when an incident report is required." Declaration of Robert Ultan in Support of Defendant's Response to United States' Supplemental Brief ("Ultan Decl."), Ex. D at 1. According to DGO 5.06, the general policy of the SFPD mandates that officers should "cite and release all persons arrested for misdemeanor and infraction offenses" rather than initiate a custodial arrest unless an exception applies. *Id.* When a person is stopped by the SFPD solely for an infraction, "he/she **shall** be cited" unless the person: (1) "refuses to present satisfactory evidence of his/her identity"; (2) "refuses to give a written promise to appear"; or (3) "demands an immediate appearance before a magistrate." *Id.* at 3 (emphasis added).

Under the "Procedures" heading, DGO 5.06 refers to DGO 9.01 (Traffic Enforcement) for further information regarding how officers should handle citations for traffic offenses. *Id.* DGO 9.01,

in turn, explicitly directs that "[e]xcept as required by Section 40302 CVC, all traffic violators **shall be released upon their written promise to appear**." Ultan Decl., Ex. E at 2 (emphasis added).[2] With regard to the question of identifying a person to cite him/her for a moving violation, DGO 9.01 states that, "[A]n officer shall reasonably ascertain the true identity of the violator. If this is not possible through valid identification **or other efforts**, the violator shall be booked . . . ." *Id.* (emphasis added). In its simplest form, these "other efforts" could consist of asking the person for their name and birthdate in order to run a records check. *See People v. Lopez*, 2019 Cal. LEXIS 8892, at *28–*30, *36–*37 (Cal. Supr. Ct. 2019) (holding that a warrantless search of a car during a traffic stop for evidence of identification violates the Fourth Amendment, and noting that the officer could have used less invasive methods to identify the driver, such as asking for identifying information)[3]; *see also* Shaini Suppl. Decl. ¶ 1; Declaration of SFPD Officer John F. Murphy in Support of United States' Supplemental Suppression Brief ("Murphy Suppl. Decl."), Dkt. No. 35-2, ¶ 2. Incident reports from other cases involving scooter infraction charges indicate that SFPD officers are able to and do in fact verify identification by following this procedure before making an arrest. *See* Ultan Decl., Ex. F.

      The provisions of DGOs 5.06 and 9.01 make clear that when SFPD officers stop an individual for an infraction, they are supposed to issue a citation rather than arrest the person unless an exception applies. None of those exceptions are present in the instant case. They are also supposed to engage in other efforts to ascertain a traffic violator's identity if the person does not have ID. Neither officer did so here.

---

[2] CVC § 40302 lays out four scenarios in which the default cite-and-release procedure does not apply, and the person must be arrested: (1) when the person does not present both a driver's license or other satisfactory evidence of identity and an unobstructed view of his/her full face; (2) when the person refuses to give a written promise to appear; (3) when the person demands to be taken immediately before a magistrate; and (4) when the person is charged with violating CVC § 23152 (driving under the influence of alcohol or drugs). CVC § 40302. As previously noted, the government presumably recognizes that these exceptions do not apply to Mr. Rodriguez's case and has not asserted that any do.

[3] Officers may also choose to release a detainee without a citation and instead with a mere warning, *see Lopez*, 2019 Cal. LEXIS 8892, at *33–*34, which would vitiate the need for identification. The Court in *Lopez* clearly views custodial arrest for a traffic violation as the last resort if all else fails. *Id.* ("And finally, if no other path seems prudent or permissible, the officer can arrest the detainee and take him or her to be booked into jail for the traffic violation."). It reasoned that "the availability of so many alternative means for achieving law enforcement ends tends to undermine the notion that the intrusion is reasonable" under the Fourth Amendment. *Id.* at *34.

RESP. TO UNITED STATES' SUPPL. BRIEF
*RODRIGUEZ*, CR 19–279 CRB

Mr. Rodriguez never refused to give a written promise to appear, nor did he ever demand an immediate appearance before a magistrate. Mr. Rodriguez did not "refuse" to present evidence of his identity, and the officers did not make any other efforts to reasonably ascertain his identity—as DGO 9.01 commands them to do—beyond asking for an ID. Mr. Rodriguez told Officer Shaini that his ID was in his car and pointed up the street in that direction; he never had the opportunity to provide other evidence of identity (i.e., his name and birthdate) because neither officer ever asked him for that information until well after Officer Shaini unlawfully frisked him. *See* Declaration of Angela Chuang in Support of Motion to Suppress ("Chuang Decl."), Dkt. No. 16, Ex. A at 1121; Chuang Decl., Ex. B1 at 07:25:11–07:25:50.

Both officers state in their supplemental declarations that their practice is to ask a person for a name and birthdate if the person has no ID, which allows them to run a records check remotely. *See* Shaini Suppl. Decl. ¶ 1; Murphy Suppl. Decl. ¶ 2–3. Yet inexplicably, neither officer actually followed this self-reported practice by asking for Mr. Rodriguez's name and birthdate after he said he had no ID.[4] The officers also had other reasonable alternatives at their disposal—i.e., going with Mr. Rodriguez to his car to retrieve his ID, releasing Mr. Rodriguez with a verbal warning[5]—that they did not pursue. Nor did they pursue the option of having Mr. Rodriguez place his thumbprint on a notice to appear, which is explicitly contemplated by CPC § 853.5(a) as an alternative when an individual does not have ID. *See* CPC § 853.5. They therefore failed to follow their own department's directives (DGOs 5.06 and 9.01); furthermore, had they arrested Mr. Rodriguez for a mere scooter infraction because he had no ID on his person, as they claim was their intent, that would have been in violation of those policies.

### B. SFPD's overwhelming practice is to cite and release individuals for scooter infractions

Actual SFPD practices regarding stops for scooter infractions further undermine the officers' assertion that they would have arrested Mr. Rodriguez on that basis. Between January 1, 2018, and

---

[4] Interestingly enough, Officer Murphy eventually identified Mr. Rodriguez by simply asking him for this information and requesting a records check **after** the unlawful frisk had already happened. *See* Murphy Suppl. Decl. ¶ 7.

[5] Officer Murphy states in his declaration that issuing a verbal warning is within an officer's discretion. Murphy Suppl. Decl. ¶ 4.

November 14, 2019, the SFPD issued 58 citations for scooter infractions. Ultan Decl. ¶ 5. During that same time period, the SFPD arrested 5 people for charges including scooter infractions, one of whom was Mr. Rodriguez. *Id.* ¶ 6. None of the custodial arrests was based solely on a scooter infraction, meaning they all involved additional criminal charges (misdemeanors or felonies) and/or active warrants. *Id.* This means that only 7.9% of these 63 encounters involving scooter infractions resulted in a custodial arrest, and 0.0% of them resulted in a custodial arrest based entirely on such infractions.[6] Clearly, the overwhelming practice of the SFPD is to issue citations for scooter infractions, and it would have been incredibly anomalous—essentially unheard of—for Officers Shaini and Murphy to arrest Mr. Rodriguez just for violating CVC § 21235(g).

## CONCLUSION

For the reasons set forth above and in previous filings, Mr. Rodriguez respectfully requests that the Court grant his motion to suppress in its entirety.

Dated:   December 4, 2019            Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender
Northern District of California

           /S
ANGELA CHUANG
Assistant Federal Public Defender

---

[6] It is important to note that SFPD was unable to provide documentation on the number of scooter infraction stops that resulted in a verbal warning and no citation, presumably because no such documentation exists. *See* Ultan Decl. ¶ 5. However, it is safe to assume that such encounters did occur within the same time period, which means that even the 7.9% figure overstates how often people are arrested on charges including scooter infractions.

RESP. TO UNITED STATES' SUPPL. BRIEF
*RODRIGUEZ*, CR 19–279 CRB